IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ERIC SWARTZ, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:19-cv-00540-P |
| § | |
| TEXTRON GROUND SUPPORT § | |
| EQUIPMENT INC. f/k/a TUG § | |
| TECHNOLOGIES CORP., § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Textron Ground Support Equipment Inc.'s ("Textron") 12(b)(6) Motion to Dismiss ("MTD") (ECF No. 25), Plaintiff Eric Swartz's ("Swartz") Response (ECF No. 27), and Textron's Reply (ECF No. 29). Having considered the Motion to Dismiss, related briefing, and applicable law, the Court finds that Textron's Motion to Dismiss should be and hereby is **GRANTED**.

### BACKGROUND[1]

On or about February 17, 2017, while in the course and scope of his employment as a bag agent for American Airlines, Inc. ("American"), Swartz was injured when he fell from a belt loader that was designed, manufactured and marketed, and sold by Textron. *See* ECF No. 17 ("Amended Complaint") at ¶ 15. A belt loader is a motorized vehicle with a

---

[1]Unless otherwise noted, this background section is comprised of the factual allegations in Swartz's First Amended Complaint (ECF No. 17). *See Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007).

conveyor belt built for the purpose of loading and unloading cargo onto an aircraft. *See id.* at ¶ 12. At the time of Swartz's injury, he was using a Tug 660 Model Belt Loader to load baggage into the aft cargo compartment of a Boeing 767—which Swartz alleges is approximately 10–12 feet off the ground. *See id.* at ¶ 17. Swartz contends that after loading the aircraft, he was walking down the belt loader while holding a safety handrailing when the railing "suddenly and without warning collapsed, causing him to fall off the belt loader and violently strike the ground." *Id.* at ¶ 18. Swartz's fall resulted in abrasions to his left knee and a fractured heel. *See id.* at ¶ 19. Swartz alleges that an investigation conducted by American "revealed that a pin holding up the safety railing on the Tug 660 Model Belt Loader failed, which caused the safety railing to collapse." *Id.* at ¶ 21. The Tug 660 Model Belt Loader at issue in this case was sold by Textron to Air Cal/American Airlines in 1985, almost 34 years before the incident. *See* MTD at ¶ 1. Swartz further alleges that he has had at least six surgeries to repair the injuries he sustained from his fall. *See* Amended Complaint at ¶ 18.

Swartz filed suit against Textron in the 129th District Court of Harris County on February 15, 2019. *See* ECF No. 1. Swartz alleges that the Tug 660 Model Belt Loader, which Textron designed, manufactured, marketed, and sold, was defective in its design at the time it left Textron's control, and thus Textron is liable for his injuries. *See* Amended Complaint at ¶ 27. On March 12, 2019, Textron removed this case to the United States District Court for the Southern District of Texas, and on July 9, 2019, the case was transferred to the United States District Court for the Northern District of Texas. *See* ECF Nos. 1, 12.

In its Motion to Dismiss, Textron argues that Swartz's claims all belong within a products liability action as defined by the Texas Civil Practice and Remedies Code. Specifically, Textron points to Texas Civil Practice and Remedies Code § 16.012, which states that "a claimant must commence a products liability action against a manufacturer or seller of a product before the end of fifteen years after the date of the first sale of the product by the defendant." TEX. CIV. PRAC. & REM. CODE § 16.012(b). Accordingly, Textron argues that this Court should dismiss Swartz's claims as it is time barred by the 15-year statute of repose, because the belt loader in question was manufactured almost 34 years prior to Swartz's injury. Reply at 1.

In his response to Textron's Motion to Dismiss, Swartz argues that the Court must conduct a choice of law analysis between Georgia's and Texas's statute of repose. *See* Pl.'s Resp. to Def.'s Mot. to Dismiss ("Response") at ¶ 1. Georgia's statute, OCGA § 51-1-11, like Texas's, bars liability claims that are brought more than ten years after the first sale of a product. However, Georgia's 10-year statute of limitations does not apply to actions "seeking to recover from a manufacturer for injuries or damages arising out of the negligence of such manufacturer in manufacturing products which cause a disease or birth defect, or arising out of conduct which manifests a willful, reckless, or wanton disregard for life or property." OCGA § 51-1-11 (c). Accordingly, the Court will conduct an analysis to determine which state's law applies.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV.

3

P. 8(a)(2). Rule 8 does not require detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6).

When reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier*, 509 F.3d at 675. The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

With regard to evaluating the sufficiency of a complaint, courts consider the complaint in its entirety, as well as documents incorporated by reference and matters of which a court may take judicial notice. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *U.S. ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 379 (5th Cir. 2003).

## ANALYSIS

In a diversity case such as this, federal courts apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In deciding choice-of-law issues, Texas courts follow the Restatement (Second) of Conflict of Law's

4

"most significant relationship" test, which entails considering the contacts listed in Restatement § 145 in light of the factors set forth in Restatement § 6. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Am. Eurocopter Corp.*, 692 F.3d 405, 408 (5th Cir. 2012).

> The relevant contacts from § 145 are:
>
> (1) the place where the injury occurred,
> (2) the place where the conduct causing the injury occurred,
> (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> (4) the place where the relationship, if any, between the parties is centered.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971).

> And the factors set forth in Restatement § 6 are:
>
> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

*Id.* at § 6.

**A.    Section 145 Relevant Contacts**

    **1.    <u>The Place Where the Injury Occurred Favors Application of Texas Law</u>**

The place where the injury occurred is an "important factor" in deciding which state's law applies. *Huddy v. Fruehauf Corp.*, 953 F.2d 955, 957 (5th Cir. 1992). Under the Restatement, in tort cases, "the applicable law will usually be the local law of the state where the injury occurred." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 156(2) (1971). Comment "e" to Section 145 of the Restatement explains:

> In the case of personal injuries or of injuries to tangible things, the place where the injury occurred is a contact that, as to most issues, plays an important role in the selection of the state of the applicable law (see §§ 146–147). This is so for the reason among others that persons who cause injury in a state should not ordinarily escape liabilities imposed by the local law of that state on account of the injury.

It is undisputed that Swartz was injured in Texas. Accordingly, the Court **FINDS** that this contact weighs in favor of applying Texas law.

2.  Place of Conduct Causing the Injury Favors Application of Texas Law

Under Texas law, the place of conduct causing the injury in a defective marketing claim—which Swartz is alleging—is where the product was used. *Sulak v. Am. Eurocopter Corp.*, 901 F. Supp. 2d 834, 844 (N.D. Tex. 2012) (holding that the failure to warn arose in Hawaii, because that is where the allegedly defective helicopter was operated even though it was designed and manufactured in France).

Swartz argues that Georgia is the place where the conduct causing the injury occurred, because his lawsuit "alleges negligent conduct by Defendant in Georgia." *See* Response at ¶ 10. Specifically, Swartz alleges that the conduct that caused the injury is the absence of warnings in Textron's marketing of the belt loader in question. *See* Amended Complaint at ¶ 36. Swartz argues that this conduct indicates that Georgia law should be applied. The Court is not convinced by this argument. Like in *Sulak*, where the court found that the place of conduct causing the injury was Hawaii—where the allegedly defective helicopter crashed— and not France where the helicopter was designed and manufactured, here, the product was used in Texas, thus, the place of conduct causing injury is Texas, not

6

Georgia, where it was designed and manufactured. Thus, the Court **FINDS** the second of the § 145 contacts weighs in favor of applying Texas law.

> 3. Domicile, Residence, Nationality, Place of Incorporation and Place of Business of the Parties Favors Application of Texas Law

Swartz is a resident of Texas. Amended Complaint at ¶ 1. Textron is a Delaware Corporation with its principal place of business in Kennesaw, Georgia. *Id.* at ¶ 7. The owner and operator of the Tug 660 Model Belt Loader at issue and Swartz's employer, American Airlines, is in Texas. *Id* at ¶ 5. The Belt Loader was used and maintained in Texas. *Id.* Given the scattered nature of the parties, this contact carries little weight, however the weight it does provide favors the use of Texas law as "Texas has a strong commitment to protecting its residents from defective and dangerous products." *Huddy*, 953 F.2d at 958 (citing *Mitchell v. Lone Star Ammunition, Inc.*, 913 F.2d 242, 249 (5th Cir. 1990)). Texas courts also accord little weight to a manufacturer's principal place of business. *See Huddy*, 953 F.2d at 958.

Accordingly, the Court **FINDS** that the third of the § 145 contacts weighs in favor of applying Texas law.

> 4. The Fourth Contact is Inapplicable as Swartz and Textron Have No Relationship

Section 145 of the Restatement establishes the fourth factor as "the place where the relationship, if any, between the parties is centered." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2)(d) (1971). Paragraph (d) acknowledges the possibility that there may be no relationship between the parties by using the phrase "if any." *Id*. Thus, this factor is considered when a relationship does exist between the plaintiff and the defendant,

and the injury was done in the course of that relationship. *See id.* at cmt. e. A plaintiff's mere contact with a defendant's product does not constitute the type of relationship that Section 145 contemplates. *See Crisman v. Cooper Indus.*, 748 S.W.2d 273, 278 (Tex. App.—Dallas 1988, writ denied) (holding the fourth prong of the § 145 test was inapplicable to a product-liability suit because the parties had no relationship prior to the accident).

Here, Swartz and Textron had no relationship prior to the accident. Swartz merely had contact with a product designed and manufactured by Textron—the Belt Loader. Texas law is clear that such a contact is insufficient to create a relationship in the context of the fourth factor. Accordingly, the Court hereby **FINDS** that the fourth factor is inapplicable as there was no relationship between Swartz and Textron.

After analyzing the various Section 145 factors, the Court holds that they weigh in favor of the application of Texas law.

**B.     Section 6 Factors**

    1.     <u>The Needs of Interstate and International Systems Favors the Application of Texas Law</u>

This factor requires the Court to apply the state law that will "seek to further harmonious relations between states and to facilitate commercial intercourse between them" and functions "to make the interstate and international systems work well." RESTATEMENT (SECOND) CONFLICT OF LAWS § 6 cmt. d; *see Sacks v. Four Seasons Hotel Ltd.*, No. 5:04-CV-073, 2006 WL 783441, at *17 (E.D. Tex. Mar. 24, 2006). The Court

**FINDS** that this factor is neutral because the choice-of-law decision will not have a substantial, if any, effect on commercial activity between Texas and Georgia.

> 2. The Relevant Policies of the Forum and Basic Policies Underlying the Particular Field of Law Favor Application of Texas Law

As explained above, Texas has a demonstrated a commitment to protecting its residents from defective and dangerous products." *Huddy*, 953 F.2d at 958. "The Texas State Legislature and courts have developed an almost paternalistic interest in the protection of consumers and the regulation of the conduct of manufacturers that have business operations in the state." *Mitchell*, 913 F.2d 242, 250 (5th Cir. 1990) (citing *Dow Chem. Co. v. Alfaro*, 786 S.W.2d 674 (Tex. 1990)). "The expansive Texas system of tort liability for defective products serves as an incentive to encourage safer design and to induce corporations to control more carefully their manufacturing processes." *Id.* (citing *Baird v. Bell Helicopter Textron*, 491 F. Supp. 1129, 1141 (N.D. Tex. 1980) (Belew, J.)). At the same time, by promulgating a statute of repose, the Texas legislature evinced a specific policy concern for protecting manufacturers against stale product-liability suits. *Grosskopf v. Chrysler Grp. LLC*, No. A-14-CA-801-SS, 2015 WL 6021851, at *6 (W.D. Tex. Oct. 14, 2015).

Based on the foregoing, the Court concludes that Texas clearly has a significant interest in this failure to warn case brought by a resident of Texas, regarding an injury received in Texas from a product maintained and operated in Texas. Accordingly, the Court **FINDS** that this factor also favors the application of Texas law.

    3.    <u>The Relevant Interest of Georgia as an Interested State</u>

In Georgia, choice-of-law issues in tort cases are "governed by the rule of *lex loci delicti,* which requires application of the substantive law of the place where the tort or wrong occurred." *Carroll Fulmer Logistics Corp. v. Hines,* 309 Ga. App. 695, 710 (2011). In this case, the tort took place in Texas, and Georgia's statute of repose is procedural, not substantive. *Bagnell v. Ford Motor Co.*, 297 Ga. App. 835, 836 (2009). While not dispositive, this shows that Georgia's interest in accidents outside of Georgia is minimal. In turn, Texas has a significant interest in protecting its citizens from accidents that occur within Texas. Accordingly, the Court concludes that Georgia's interests in applying Georgia law outside of Georgia are outweighed, and therefore the Court **FINDS** that this factor also favors the application of Texas law.

    4.    <u>Ease in the Determination and Application of the Law</u>

This factor is neutral, because the Court could easily apply either Texas or Georgia law.

    5.    <u>The Protection of Justified Expectations and the Certainty, Predictability, and Uniformity of Result Favors Texas Law</u>

In areas such as negligence, "the parties have no justified expectations to protect, and this factor can play no part in the decision of a choice-of-law question." Restatement (Second) of Conflicts of Laws § 6, cmt. g. Likewise, "the values of certainty, predictability and uniformity of result are of lesser importance in torts than in areas where the parties and their lawyers are likely to give thought to the problem of the applicable law in planning their transactions." *Id.* Even though these factors may not play a large role in tort cases

10

such as this one, they still favor the application of Texas law. The Restatement provides that when the place of injury is readily ascertainable, applying the law of the place of injury is "easy" and "leads to certainty of result." *Id.* § 146 cmt. While it is of lesser import than the other factors, the Court concludes that this factor also favors the application of Texas law.

After considering the contacts listed in Restatement § 145 in light of the factors set forth in Restatement § 6, the Court **FINDS** that the factors favor the application of Texas law in this case.

## CONCLUSION

Because the Court has determined that Texas law should be applied in this case, and the relevant Texas statute of repose states that "a claimant must commence a products liability action against a manufacturer or seller of a product before the end of 15 years after the date of the first sale of the product by the defendant," Swartz's claim is time-barred since the Belt Loader was manufactured almost 34 years prior to Swartz's injury. *See* TEX. CIV. PRAC. & REM. CODE § 16.012(b).

Therefore, the Court finds that Textron's Motion to Dismiss (ECF No. 25) should be and is hereby **GRANTED.** Accordingly, Swartz's claims against Textron are hereby **DISMISSED with prejudice.**

**SO ORDERED** on this **15th day** of **July, 2020.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE

11